UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE NASSIF,

    Plaintiff,

v.

NATIONAL CITY BANK,

    Defendant.
                                        /

Case No. 06-14255

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]**

    This matter comes before the Court on Defendant National City Bank's motion for summary judgment, filed on May 30, 2007.  Plaintiff George Nassif sued Defendant for allegedly unlawful discrimination on the basis of his national origin, in violation of 42 U.S.C. § 1981.  Defendant argues that (1) Plaintiff is unable to state a prima facie case of discrimination, and, alternatively, (2) he is unable to rebut Defendant's legitimate, non-discriminatory justification for his termination with sufficient evidence of pretext. For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

**I.  FACTS**

    Defendant hired Plaintiff, a man of Lebanese descent, in April 2005 as an Assistant Vice President of Small Business Banking/Commercial Lending.  (Def.'s Mot. for Summ. J. (hereinafter, "Def.'s Mot.") at 2.)  Prior to his employment with Defendant, Plaintiff held similar positions with Charter One Bank.  Throughout this time period,

1

Plaintiff's responsibilities included generating leads for new commercial loans, ensuring that such loans were properly documented, and cross-selling other bank services to business customers. (*Id.* at 1-2.)

While at Charter One Bank, Plaintiff became acquainted with Abraham Nunu and Nunu's various business ventures. Upon moving to Defendant, Plaintiff brought Nunu over as a customer who maintained relatively large deposits and loan balances with Defendant. Of primary importance to this case is a loan that Plaintiff originated to Highland Food, Inc. ("Highland"), one of Nunu's companies that operated a number of Subway restaurants. (*Id.* at 4.) In preparation for the March 20, 2006 closing for this loan, Jennifer Rottinghaus, one of Defendant's employees in its underwriting department, prepared the necessary legal documents and emailed them to Plaintiff. (*Id.* at 3, 5.) Rottinghaus did not attend the closing herself, however.

Plaintiff was late arriving for the closing, so a branch manager, Josephine Henyard, started the process with Nunu. Once Plaintiff was present, he conducted the remainder of the closing and Henyard left. (Nassif Dep., Def.'s Mot, Ex. A at 88.) Included in the package of documents from Rottinghaus were an Assignment of Deposit Account form (the "Assignment") and a Commercial Guaranty (the "Guaranty") that required signatures from Nunu's wife and other family members. (Def.'s Mot*.* at 5.) When Plaintiff reached these documents in the closing process, Nunu questioned why his wife's signature was necessary, given that she was not involved with Highland. Plaintiff responded that he would "put [the Commercial Guaranty] to the side and we will clarify it tomorrow." (Nassif Dep. at 91.) Following the closing, proceeds of $980,000

were disbursed to Highland on March 24, 2006.[1]  (Def.'s Mot. at 6.)  The following day, Defendant became aware that Highland filed for bankruptcy.  As a result of Plaintiff's failure to procure signatures for the Assignment and Guaranty, Defendant's loan position was left unsecured.  (*Id.*)

Following Nunu's bankruptcy filing, Defendant conducted an investigation into the Highland transaction as well as other loans that Plaintiff originated during his employment.  As a result of the investigation, Defendant terminated Plaintiff on June 15, 2006 for failure to obtain the necessary documents to ensure that Defendant's loan to Highland was properly collateralized.  This decision was made by Bethany Rivera, Plaintiff's direct supervisor, and David Morrison, Executive Vice President of Small Business Banking-Michigan.  Defendant then hired Amjad Chaudhry, a Pakistani individual, to fill Plaintiff's vacant position.  (*Id.* at 7.)

## II. STANDARD OF REVIEW–MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears

---

[1]It is in dispute as to whether Defendant or the title company actually disbursed the funds.  Viewed in a light most favorable to Plaintiff, however, it must be assumed that Defendant itself had control of the funds until they were actually disbursed several days after closing.

3

the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  ANALYSIS

In cases such as this where the plaintiff relies on circumstantial evidence of discrimination because direct evidence is unavailable,[2] the familiar burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.  First, Plaintiff must state a prima facie case of discrimination, which requires that "1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse

---

[2]Plaintiff admits that he lacks direct evidence of discrimination, as nobody at Defendant specifically said anything negative to him as a result of his national origin. (Nassif Dep. at 134.)

4

employment action; and 4) that he . . . was treated less favorably than a similarly situated individual outside his protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). If the plaintiff does so, the burden of production then shifts to the defendant to assert a legitimate, non-discriminatory justification for the adverse employment action. Once this is met, the burden returns to the plaintiff to bring evidence that the defendant's reason is mere pretext for unlawful discrimination. *Id.* at 573.

### A. Plaintiff Fails to State a Prima Facie Case of Discrimination

Defendant does not dispute that Plaintiff has met the first three elements of a prima facie case,[3] but argues that he has failed to demonstrate that other non-Arabic employees who were involved in the Highland loan transaction were treated differently than he was. For his part, Plaintiff claims that Defendant's other similarly-situated employees were Rottinghaus, Henyard, and Mark Matson, Vice President and Senior Credit Officer. (Pl.'s Resp. at 6; Matson Aff., Def.'s Mot., Ex. C ¶ 1.)

In support of its position on this point, Defendant cites *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), a discrimination case where the court held that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would

---

[3]In actuality, Defendant's brief in support of its motion for summary judgment only lists three elements for a prima facie case of discrimination, and does not specifically discuss whether Plaintiff was qualified for this position. That said, there appears to be no dispute that, but for this particular incident, Plaintiff was generally meeting or exceeding the expectations of his supervisors, so the Court concludes that he was sufficiently qualified.

5

distinguish their conduct or the employer's treatment of them for it." Accordingly, Defendant argues that the fact Plaintiff had a different supervisor from the other three individuals means he has not stated a valid prima facie case.

In response, Plaintiff properly notes that this Court need only consider *relevant* characteristics between him and other similarly-situated employees of Defendant, and the simple fact that he did not share a supervisor with Rottinghaus, Henyard or Matson is not dispositive of his claim. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). In particular, Plaintiff argues that because Rivera was not the sole decision-maker regarding his termination, the fact that the other three allegedly comparable individuals were not her subordinates is irrelevant under the specific facts of this case.

The Court need not focus on this particular issue, however, because Plaintiff's claim that Henyard and Matson are comparable suffers from a more fatal flaw. Plaintiff argues that he

> did not have the sole discretion in approving Mr. Nunu as the loan recipient. [P]laintiff was simply the originator. [D]efendant had an underwriting department that had the responsibility of performing due diligence to assure the fact that Mr. Nunu was an acceptable credit risk.
>
> * * *
>
> Each of these individuals had a hand in the Nunu closing. These individuals are similarly situated in that if someone had to be disciplined because of the default of Mr. Nunu then each of these individuals shared some responsibility.

(Pl.'s Resp. at 6.)

Plaintiff's position misses the mark, however, in that it misunderstands the conduct for which Defendant terminated Plaintiff. This was not a situation where a loan went bad despite a full underwriting by other bank employees and one individual took

6

the fall for the rest of the team.  Rather, this case involves a bank officer who admits he made a unilateral decision to continue with a closing without executing various documents that appeared on a closing checklist.  Thus, the mere fact that other of Defendant's employees had a hand in the Highland closing is not relevant to the ultimate question at hand.  At bottom, Plaintiff must show that Rottinghaus, Henyard or Matson exercised a similar degree of discretion in not requiring signatures on the Assignment or Guaranty.

Plaintiff's claim that these employees are similarly situated to him is also weakened by the fact that none of the three were present at the closing when the fateful decision was made.  Rottinghaus prepared the documents and sent them to Plaintiff, but did not attend the closing.  Henyard started the closing in Plaintiff's absence, but she left once he arrived and Plaintiff admits she was not involved in the decision to set the Guaranty aside.  (Nassif Dep. at 119.)  Next, Matson appears to have been the final credit officer who approved the deal, but, again, he was not present at the closing, nor is there evidence that his approval was conditioned upon anything less than having all documents signed prior to disbursement of funds.  Finally, Plaintiff concedes that he made the decision not to obtain these signatures without input from any other individuals.  (Nassif Dep. at 119.)

For all of these reasons, Henyard and Matson are not similarly situated to Plaintiff because no evidence exists that either of them exercised the discretion to proceed with the closing without having the Assignment and Guaranty signed.  With regards to Rottinghaus, on the other hand, Plaintiff testified at his deposition that the day after closing he discussed the belief that Nunu's wife's signature was not necessary

7

with Rottinghaus, she agreed, and she disbursed the funds even though these documents were not executed. Taken in a light most favorable to Plaintiff, as this Court must on a motion for summary judgment brought by Defendant, this testimony suggests that Rottinghaus is partially responsible for the loss, as the loan proceeds would not have been disbursed without her permission. Thus, she is a candidate to be a relevant comparable employee who was not terminated as a result of this incident.

As noted above in *Mitchell* and *Wright*, however, the Sixth Circuit has indicated that the analysis of comparable employees includes *all* relevant similarities and distinctions. Therefore, the simple fact that Plaintiff and Rottinghaus both exercised some level of authority over the loan process is not enough, in and of itself, to reach a conclusion that Rottinghaus is comparable to Plaintiff. With regards to differences in their authority, the only evidence of Rottinghaus's responsibilities comes from Rivera's affidavit, as Plaintiff does not point to any specific evidence on this point. In part, Rivera's affidavit states:

> Jennifer Rottinghaus is not an NCB officer. Her sole responsibility at the time of the Highland Foods loan was to generate the documents dictated by the Underwriting Department. Ms. Rottinghaus had no authority to alter the conditions imposed by the Underwriting Department, and it was not within her responsibility to obtain approval to remove any of the conditions imposed with regard to loan closings.

(Rivera Aff., ¶ 9.) This evidence indicates that Rottinghaus did not share the same job classification, responsibilities and level of authority as Plaintiff, and was more of a support-level employee. As Plaintiff has not raised any evidence of his own to refute this testimony, Rivera's affidavit indicates that there were significant differences between Plaintiff's position and that of Rottinghaus to conclude that she was not a

8

comparable employee. Accordingly, Plaintiff has failed to state a prima facie case of discrimination because he has not identified any similarly-situated employee who was not disciplined as a result of the Highland loan closing.

### B. Defendant States a Legitimate, Non-Discriminatory Justification

Even if Plaintiff met his burden of showing a prima facie case, Defendant has stated a legitimate justification, in that Plaintiff's termination resulted from his failure to properly document a loan as instructed, causing Defendant to incur a six-figure loss when the borrower filed for bankruptcy. Thus, the burden of production would return to Plaintiff to demonstrate that Defendant's reason is pretext for unlawful discrimination.

### C. Plaintiff Fails to Show that Defendant's Reason is Pretext

A plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000)). Here, Plaintiff admits the facts behind the incident in question, so the first avenue is not available. Thus, he must either show that Defendant's asserted justification was not the true reason behind his termination, or that his error did not entitle Defendant to take this particular adverse employment action.

On the first of these remaining options, Plaintiff argues, somewhat indirectly, that Defendant failed to monitor the amount of funds in the underlying account referred to in the Assignment. This resulted in Nunu's wife making withdrawals that reduced the balance to zero by May 2006. Accordingly, Plaintiff claims that his failure to have these documents signed was moot given that Defendant allowed any monies that would have

9

been security for the loan to be withdrawn anyway, so it was irrelevant that he did not have the missing documents signed since the end result was the same.

Again, however, Plaintiff's position disregards a relevant, undisputed fact from the record. He has properly noted that Defendant's investigative report indicates Nunu's wife made withdraws from an account "beginning 2/06 [and continuing] through May 06," and that the account was closed on May 12, 2006. (Pl.'s Resp. at 8; Ex. 1 at 14.) That said, Plaintiff's evidence says nothing about how much remained in this account several days after the Highland loan closing in late March when Defendant learned of Nunu's bankruptcy, which is the operative date due to the fact that Defendant could have placed a hold on that account to preserve the funds at that time, assuming that Plaintiff had procured signatures on the proper documents. In fact, the only evidence on the record of the amount that the subject account contained shortly after the date of the Highland closing comes from Lon Keast, an employee in Defendant's troubled loan workout group, who states that "[h]ad [the Assignment] been executed as required, [Defendant] would have, in April 2006 when we reviewed it, exercised its right of setoff in order to satisfy a large portion of the Highland Foods credit loss." (*Id.* ¶¶ 5-6.) Whether enough would have remained in the account as of that date to fully cover Defendant's exposure to Highland is irrelevant–the key point is that Defendant could have at least recovered some of Highland's obligation had the loan been properly documented. Following Plaintiff's mistake, however, Defendant was unable to recover anything, so the consequences of his actions were not, in fact, irrelevant.

With regards to Plaintiff's second remaining option of showing pretext, he points to the fact that Defendant admits Plaintiff occasionally missed documents on other loan

closings, but that Defendant did not terminate Plaintiff for these mistakes, as they were always resolved within thirty days. Plaintiff argues that this leads to an inference that missing documentation in a loan closing does not support terminating an employee. Once again, Plaintiff's argument fails to appreciate the magnitude of the mistake here, and does not assert that any of his past documentation discrepancies resulted in a complete lack of collateral for the subject loan. Furthermore, Plaintiff cannot name any other employee of Defendant who committed a similar mistake and was not terminated, (Nassif Dep. at 116-17) so he has also failed to show pretext on this ground.

Therefore, even if Plaintiff had pleaded a proper prima facie case of discrimination, he has failed to demonstrate that Defendant's justification for his termination was pretext, and his claim fails on this alternative ground as well.

## IV. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendant's motion for summary judgment is GRANTED and this case is DISMISSED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 31, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer

11

Case Manager